**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RAYMOND PADILLA, | 3:07-cv-0442-RAM |
| Plaintiff, | **MEMORANDUM DECISION** |
| vs. | **AND ORDER** |
| THE STATE OF NEVADA in relation to the NEVADA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

Before the court is Defendant's Motion to Dismiss (Doc. #16), Plaintiff's Motion for Summary Judgment (Doc. #25), and Plaintiff's Motion for a Preliminary Injunction (Docs. #13 and #42).

### I. BACKGROUND

At all relevant times, Plaintiff was an inmate at Ely State Prison in custody of the Nevada Department of Corrections (NDOC). (Doc. #5 at 1.) Defendants are administrators, correctional officers, and employees within the NDOC system. Count I of Plaintiff's complaint, brought pursuant to 42 U.S.C. § 1983, alleges that after he was sanctioned with a ten-day loss of his canteen privileges for a disciplinary infraction in July 2007, he was again sanctioned for the same offense. Plaintiff alleges that prison officials impounded his personal property and revoked his visiting, phone call, and canteen privileges for 180 days and his package privileges for two years. (Doc. #5 at 5.)

///
///

Count II alleges that ESP's Institutional Operational Procedure (IP) 5.13 grants Warden E.K. McDaniel the authority to adopt regulations and penalties that violate Nevada Revised Statute § 209.361 and NDOC Administrative Regulations (ARs) 585 and 707. Plaintiff alleges that IP 5.13 denies him a fair hearing, notice of charges, or appeal. (*Id.* at 6.)

Count III alleges that Plaintiff has been placed in administrative segregation as a sanction for failing to cooperate in an informant program. (*Id.* at 8.) Plaintiff alleges that various unnamed prison officials are using this classification status to continue to retaliate against Plaintiff under the guise of protective segregation after he debriefed from a prison gang. He also alleges that his requests for a full classification hearing and to be provided the privileges of protective segregation have been denied. Plaintiff further alleges that there are no penological concerns justifying his administrative segregation, as his debriefing was a confidential matter that would not be known to the general prison population. (*Id.* at 9.)

Based on these allegations, Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to procedural due process and equal protection for each of his claims. (*Id.*) Plaintiff seeks declaratory and injunctive relief as well as damages. (Doc. #5 at 14-15.) Defendants move to dismiss based on Eleventh Amendment immunity, lack of personal participation, and because the lawsuit duplicates a pending action already before the court. (Doc. #16 at 2.)

### III. DISCUSSION

**A.   Defendants' Motion to Dismiss**

Before the court is Defendant's Motion to Dismiss. (Doc. #16.) Plaintiff has opposed. (Doc. #25.) After a thorough review, the court orders that Defendants' motion be denied in part and granted in part.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. All allegations of material fact are construed in the light most favorable to Plaintiff, taking any reasonable inferences drawn from them as true. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The plaintiff need only give

defendants a fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). A Rule 12(b)(6) dismissal may arise from a lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). At minimum, the complaint should plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson*, 127 S.Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). In giving liberal construction to a pro se civil rights complaint, the court is not to supply essential elements of the claim that were not initially pled. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**1.    ELEVENTH AMENDMENT IMMUNITY**

The Eleventh Amendment bars federal courts from hearing suits brought against an unconsenting state. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). This immunity extends to state agencies administering prisons. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, the State of Nevada, the Nevada Department of Corrections, and the Nevada Board of Prison Commissioners should be dismissed from this lawsuit.

The Eleventh Amendment bar also extends to a federal court action for damages (or other retroactive relief) brought by a citizen against state official acting in his official capacity. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 664 (1974)). It will not, however, bar claims against the officials in their personal capacities.

3

*Hafer v. Melo*, 502 U.S. 21, 25 (1991). To the extent that the complaint can be construed as alleging a damages claim against the named defendants in their official capacities, those claims are dismissed. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1981).

**2.   PERSONAL PARTICIPATION**

As indicated in the screening order dismissing Plaintiff's original complaint, a showing of personal participation by a defendant is necessary for personal liability under a § 1983 claim. *Taylor*, 880 F.2d at 1045. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under § 1983. *Id.* (citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir.1984)).

Defendants Skolnik and Doe #2 are named in the complaint as directors of the Department of Corrections. Similarly, Defendant Gibbons and John Doe #1 are named in their capacity as members of the Nevada Board of Prison Commissioners. While these defendants had supervisory responsibilities over the Nevada prison system, Defendant has not alleged how these defendants personally directed, participated in, or had knowledge of the alleged misconduct by the prison officials at ESP. Thus, dismissal of these defendants is proper.

Defendants Peltzer and Chambliss are named as caseworkers at Ely State Prison. Even liberally construing the pleadings and Plaintiff's opposition, the court is unable is to discern how these defendants personally participated in the alleged constitutional violations. Plaintiff seems to name these defendants because they denied Plaintiff's grievances. This does not mean that they played a role in the alleged constitutional violations. Plaintiff fails to plead any facts sufficient to state a theory of supervisory liability based on their knowledge of the alleged constitutional violations. Therefore, these defendants are dismissed.

Defendants rely on the same reasoning to move for dismissal of Defendants Warden E.K. McDaniel, Associate Warden of Programs Adam Endel, and Associate Warden of Operations Debra Brooks. Unlike the defendants discussed above, however, Plaintiff specifically alleges

4

1 their role in the alleged deprivations. For example, Count I alleges that Warden McDaniel was
2 responsible for imposing the allegedly unlawful sanctions and directed the assistant wardens
3 to enforce them, and Count II contains similar allegations. *See, e.g.*, Doc. #25 at 3; Doc. #5 at
4 6. Therefore, dismissal of these defendants is denied.

5 With respect to Count III, the screening order (Doc. #3) granted Plaintiff leave to amend
6 his complaint to link the named defendants with an affirmative act or omission violating his
7 constitutional rights. *Id.* at 4 (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).
8 Count III of the amended complaint fails to remedy this deficiency, as it generally names the
9 prison administrators at Ely State Prison as responsible for the claims related to administrative
10 segregation. *See* Doc. #5 at 6A-6C. Plaintiff's opposition to the motion to dismiss does not
11 clarify against which defendants he is alleging these claims. Plaintiff has already been granted
12 leave to amend to properly plead this claim. Because of his failure to do so, the claim is
13 dismissed.

14 **3.  DUPLICATIVE ACTIONS**

15 Defendant argue that this lawsuit should be dismissed because it duplicates Count II of
16 a previous filing, Case No. 3:07-CV-171-RAM ("the '171 action"). Where two lawsuits may be
17 duplicative, the court should "examine whether causes of action and relief sought, as well as
18 the parties or privies to action, are the same." *Adams v. Cal Dep't of Health Servs.*, 487 F.3d
19 684, 689 (9th Cir. 2007). In analyzing an identity between the causes of action, four criteria
20 are examined, with an emphasis on the last:

21 (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether
22 substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits
23 arise out of the same transactional nucleus of facts.

24 *Id.* at 689 (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir.1982)).

25 Count II of the '171 action alleges that Plaintiff suffered from procedural due process,
26 Eighth Amendment, and equal protection violations after he was punished for refusing to
27 return to his cell in the administrative segregation unit. Plaintiff alleges that the he was

28                                     5

justified in his actions because he believed his cellmate presented a danger to him. At the disciplinary hearing, Plaintiff alleges that he was not provided an adequate opportunity to present this defense. (Case No. '171, Doc. #16 at 8.) This is factually distinct from Count I of the instant action, which challenges an additional set of sanctions that were imposed *after* Plaintiff served his original punishment. (Doc. #5 at 5.) It is unclear whether that original punishment refers to the same one in the '171 action for Plaintiff's to return to his cell. Even if it were, however, the two lawsuits involve different causes of action.

Count II of this action is also distinct from Count II of the '171 action, as here Plaintiff challenges more generally Warden McDaniel's ability to incorporate certain punishments into the institutional procedures at his institution. That claim relies on a broader set of facts than the specific incident Plaintiff complains about in the '171 action. Defendants do not explain how these claims duplicate one another or why a ruling on one would impair the judgment on the other. Therefore, their motion on this basis is denied.

**B.     Plaintiff's Motion for Summary Judgment**

Before the court is Plaintiff's Motion for Summary Judgment. (Doc. #25.) Defendants have opposed (Doc. #43), and Plaintiff has replied (Doc. #46). The motion is denied.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

/ / /

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id*.

The court construes the motion as for summary judgment on Counts I and II of the complaint based on Plaintiff's right to procedural due process under the Fourteenth Amendment. Plaintiff argues that the Warden imposed sanctions on him on July 23, 2007 without a hearing, notices, witnesses or appeal. (Doc. #25 at 7.) Plaintiff argues that he was denied due process protections and that these sanctions violated Administrative Regulations 585 and 707, as well as Nevada Revised Statutes §§ 209.161 and 209.131. Plaintiff also contends that the IP 5.13 violates AR 105.

/ / /

Under the Due Process Clause, a prisoner is entitled to certain procedural protections when he is charged with a disciplinary violation. *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). These protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* However, these protections only apply when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The inquiry into whether a prison hardship is atypical and significant is determined by three factors: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody" and thus comported with the prison's discretionary authority; (2) the duration of the condition and degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id.* at 486-87.

In this case, Plaintiff offers inadequate evidence to prove his claims that the sanctions imposed an undue hardship. Plaintiff's discipline consisted of the revocation of the following privileges: personal phone calls for 180 days, electrical appliances for 180 days, personal visits for one year, canteen privileges for 180 days, and package privileges for two years. The extent to which these privileges are granted to other inmates is a material fact not addressed by the evidence submitted by Plaintiff. The fact that they are denominated as "privileges" suggests that they are not rights created by state law that could give rise to a due process liberty interest. There is also no evidence that these are privileges normally accorded to inmates in administrative segregation or that this was an unusual punishment for Plaintiff's disciplinary offense. These are material facts that go to the seriousness of the deprivation alleged by Plaintiff.

/ / /
/ / /
/ / /

Even assuming he stated a constitutionally protected liberty interest, it is unlikely that Plaintiff was deprived of due process. Plaintiff argues that he was denied a hearing when he was disciplined under IP 5.13. However, Plaintiff was provided with a notice of charges and disciplinary hearing when he was initially sanctioned under the ARs. *See* Doc. #25 at 11-13 [notice of charges and summary of disciplinary hearing]. After reviewing the various regulations and statutes cited by Plaintiff, the court finds no requirement that Plaintiff receive a second hearing before the Warden could impose additional penalties under an IP for the same offense. Neither is there any indication that the ARs prescribe the exclusive means for Plaintiff to be punished or establish a maximum punishment for an offense. While AR 105.01-10 forbids an IP that "supersede[s]" the ARs, it is silent on whether a punishment may be enhanced. Therefore, the mere fact that Plaintiff did not receive a rehearing for his disciplinary violation does not prove that he is entitled to summary judgment on procedural due process grounds.

**C.     Motions for Preliminary Injunction**

Before the court are duplicative motions for preliminary injunction filed by Plaintiff. (Docs. #13 and #34) consisting of requests for documents and access to legal copywork. These requests are not properly brought in a motion for preliminary injunction and are therefore denied. If Defendants' recent good faith efforts to comply with his requests are still not satisfactory, Plaintiff is ordered to follow the proper procedure for requesting documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. Plaintiff's request for legal copywork is moot, as this issue was resolved during a motion hearing for the '171 case held on January 21, 2009 (Case No. '171, Doc. #117) and is demonstrated by the voluminous exhibits he has included with his opposition to his motion for summary judgment. (Doc. # 46.) If Plaintiff again encounters problems with obtaining copies, he is instructed to file a one-page motion with the court.

/ / /

/ / /

/ / /

9

# IV. CONCLUSION

**IT IS HEREBY ORDERED** that:

- The Motion to Dismiss (Doc. #16) is **GRANTED IN PART** with respect to Defendants State of Nevada in relation to the Nevada Department of Corrections, Nevada Board of Prison Commissioners, Governor Jim Gibbons, John Doe #1, Howard Skolnick, John Doe #2, Harry Peltzer, and Robert Chambliss and **DENIED IN PART** with respect to Defendants E.K. McDaniel, Adam Endel, and Debra Brooks;

- The Motion to Dismiss the complaint for being a duplicative action is **DENIED**;

- The Motion to Dismiss Count III of the Amended Complaint is **GRANTED**;

- Plaintiff's Motion for Summary Judgment (Doc. #25) is **DENIED**; and

- Plaintiff's Motions for Preliminary Injunction (Docs. #13 and #34) are **DENIED**.

DATED: March 11, 2009.

_____
UNITED STATES MAGISTRATE JUDGE