UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND PADILLA, | 3:07-cv-00442-RAM |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| THE STATE OF NEVADA in relation to the NEVADA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

Before the court is Plaintiff's Motion for Reconsideration. (Doc. #84.)[1] Defendants have opposed. (Doc. #87.) Also before the court is Defendants' Motion for Summary Judgment (Doc. #71) and Plaintiff's Motion for Summary Judgment (Doc. #79). After a thorough review, the court denies Plaintiff's Motion for Reconsideration and Plaintiff's Motion for Summary Judgment. The court grants Defendants' Motion for Summary Judgment.

## I. BACKGROUND

At all relevant times, Plaintiff Raymond Padilla was an inmate at Ely State Prison (ESP) in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. 1 (Doc. #5).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are administrators, correctional officers, and employees within the NDOC system. (*Id.* at 2-4.) Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.* at 14-15.)

///
///

---
[1] Refers to the court's docket number

In an order issued March 11, 2009, the court dismissed Defendants State of Nevada in relation to the Nevada Department of Corrections, Nevada Board of Prison Commissioners, Governor Jim Gibbons, John Doe #1, Howard Skolnick, John Doe #2, Harry Peltzer, and Robert Chambliss. (Doc. #48 at 10.) The court also dismissed Count III of Plaintiff's amended complaint. (*Id.*)

Two claims remain in this action. In Count I , Plaintiff alleges that Defendants sanctioned him twice for the same disciplinary infraction. (Pl.'s Am. Compl. 5.) Plaintiff claims that after he received his original sanction of a ten-day loss of his canteen privileges, Defendants imposed an additional sanction which resulted in the impounding of Plaintiff's personal property for 180 days, revocation of phone call and canteen privileges for 180 days, revocation of visiting privileges for one year, and revocation of package privileges for two years. (*Id.*) In Count II, Plaintiff alleges that ESP's Institutional Procedure (IP) 5.13 violates Nevada Revised Statute § 209.361 and NDOC Administrative Regulations (ARs) 585 and 707. (*Id.* at 6.) Plaintiff alleges that IP 5.13 denies him a fair hearing, notice of charges, or appeal. (*Id.*)

Based on these allegations, Plaintiff alleges Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to procedural due process and equal protection. (*Id.* at 5-7.)

## **II. PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff requests the court reconsider its dismissal of certain Defendants in its order issued March 11, 2009. (Pl.'s Mot. to Reconsider 1-4 (Doc. #84).) Plaintiff argues that information he has obtained through discovery shows the personal participation those Defendants the court has dismissed. (*Id.*) Defendants contend that the information Plaintiff submits fails to demonstrate the personal participation of the dismissed Defendants. (Defs.' Opp'n to Pl.'s Mot. to Reconsider 2-4 (Doc. #87).)

**A.  LEGAL STANDARD**

Under Fed. R. Civ. P. 59(e) a district court may reconsider and amend a previous order. However, this is "an extraordinary remedy, to be used sparingly in the interests of finality and

2

conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)(internal quotations omitted). Absent "highly unusual circumstances" a motion for reconsideration may only be granted where one of three circumstances is present: (1) the court made manifest errors of law or fact upon which the judgment is based, (2) there is newly discovered evidence or previously unavailable evidence, or (3) there is an intervening change in the controlling law. *Id*. "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id*.

**B.  DISCUSSION**

Like his original allegations, Plaintiff's allegations in his motion for reconsideration fail to plausibly show how Defendants Gibbons, John Doe #1, Howard Skolnick, John Doe #2, Harry Peltzer, and Robert Chambliss personally participated in the alleged constitutional violations. Plaintiff fails to plausibly factually allege that Gibbons, John Doe #1, Howard Skolnick, or John Doe #2 personally directed, participated in, or had knowledge of the alleged misconduct by the prison officials at ESP. For instance, Plaintiff alleges that IP 5.13 was "reviewed and approved by the Nevada Attorney Generals Office, Directors Office of the N.D.O.C. and the Nevada Board of Prison Commissioners." (Pl.'s Mot. to Reconsider 1.) However, Plaintiff fails to allege facts tying the specific, named individuals to the review of IP 5.13. Additionally, Plaintiff fails to plausibly allege that Defendants Peltzer and Chambliss personally participated simply because they denied Plaintiff's grievances. Responding to a grievance, in and of itself, does not necessarily mean that Peltzer and Chambliss played a role in the alleged constitutional violations. Plaintiff fails to plead facts sufficient to allege personal participation as to the dismissed Defendants. Therefore, the court denies Plaintiff's motion for reconsideration.

///
///
///

### III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

**A.    LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the

1  governing law will properly preclude the entry of summary judgment; factual disputes which
2  are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of
3  proof concerning an essential element of the nonmoving party's case, all other facts are
4  rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*,
5  477 U.S. at 323.

**B.   DISCUSSION**

On June 12, 2007, a correctional officer drafted a Notice of Charges (NOC) that charged Plaintiff with two general violations for Plaintiff's refusal to exit the showers and Plaintiff's refusal to double cell. (Defs.' Mot. for Summ. J. Ex. A (Doc. #71).) On June 17, 2007, a preliminary hearing officer served Plaintiff with the NOC and inquired into the charges. (*Id.*) Plaintiff refused to give a statement. (*Id.* Ex. B.) On July 1, 2007, Plaintiff attended a disciplinary hearing before a hearing officer. (*Id.* Ex. C.) The hearing officer found Plaintiff guilty of both general violations and sanctioned Plaintiff to ten-days suspension of canteen privileges. (*Id.*) On July 23, 2007, Defendant McDaniel informed Plaintiff that as a result of the guilty finding based on Plaintiff's refusal to double cell, Plaintiff would lose the following privileges pursuant to IP 5.13: personal phone calls for 180 days, electrical appliances for 180 days, personal visits for one year, canteen privileges for 180 days, and package privileges for two years. (*Id.* Ex. D.)

   1.   <u>Due Process</u>

In Count I, Plaintiff argues that Defendant McDaniel imposed additional sanctions on him on July 23, 2007, without notice, a hearing, witnesses, assistance, a fair and impartial hearing officer, or a written statement of evidence and facts to support findings. (Pl.'s Mot. for Summ. J. 6.) Plaintiff argues that he was denied due process protections and that these sanctions violated various Administrative Regulations and Nevada Revised Statutes. (*Id.* at 5-8.) Defendants contend that Plaintiff fails to establish a protected liberty interest. (Defs.' Mot. for Summ. J. 8-9.) Defendants argue that even if Plaintiff could establish a liberty interest, Defendants provided Plaintiff all the process he was due. (*Id.* at 9.)

5

Under the Due Process Clause, a prisoner is entitled to certain procedural protections when he is charged with a disciplinary violation. *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). These protections include advance written notice of the charge, an opportunity to present evidence and call witnesses, and a written statement of the findings. *Id.* However, these protections only apply when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The inquiry into whether a prison hardship is atypical and significant is determined by three factors: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody" and thus comported with the prison's discretionary authority; (2) the duration of the condition and degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id.* at 486-87.

Assuming without deciding that Plaintiff has a protected liberty interest in remaining free from the loss of privileges imposed on him via IP 5.13, Plaintiff received all the process he was due at the July 1, 2007 disciplinary hearing. First, on June 17, 2007, Plaintiff received notice of the charges against him for his refusal to double cell. The notice specifically referred to IP 5.13. (Defs.' Mot. For Summ. J. Ex. A.) Second, Plaintiff was present at the July 1, 2007 hearing and made a statement regarding the charges. (*Id.* Ex. C.) Third, Plaintiff was issued a written statement upon the hearing officer's guilty finding. (*Id.*) Although the subsequent sanctions imposed on Plaintiff via IP 5.13 occurred later than the original sanction issued at the July 1, 2007 hearing, Plaintiff received proper procedural due process for the general violation that forms the basis for the IP 5.13 sanction. The mere fact that Defendants administered Plaintiff's total sanction in a bifurcated manner fails to trigger a requirement that they provide additional process. The court concludes that Defendants provided Plaintiff proper due process before imposing sanctions under I.P. 5.13. Thus, Defendants are entitled to summary judgment on Plaintiff's Count I procedural due process claim.

1       In Count II, Plaintiff argues that IP 5.13 violates his rights to procedural due process because it conflicts with various ARs and exceeds the authority delegated to the Director and wardens of the NDOC under various Nevada Revised Statutes. (Pl.'s Compl. 6-7; Pl.'s Opp'n to Summ. J. 8-10.) Plaintiff claims that IP 5.13 effectively denies him notice, hearing, and appeal because no AR contains a procedure for imposing sanctions under IP 5.13. (Pl.'s Compl. 6.)

"[T]he Due Process Clause does not federalize state-law procedural requirements." *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). A prison official's violation of a prison administrative regulation, without more, does not amount to a federal constitutional violation. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); *see Sandin v. Conner*, 515 U.S. 472 (1995); *see Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). Although it may be desirable for a prison to adhere to its own regulations, such adherence is not an independent constitutional mandate. Prison regulations are not a proxy for the substantive protections conferred under the U.S. Constitution. Thus, in assessing an alleged constitutional violation, the court ascertains whether the conduct or condition in question presents a claim under the applicable constitutional standards – not whether the prison officials have followed their own rules. Therefore, Plaintiff fails to state a procedural due process claim premised on IP 5.13's conflict with NDOC ARs, and Defendants are entitled to summary judgment on the procedural due process claim in Count II.

2.    Double Jeopardy

To the extent Plaintiff's claim in Count I can be construed as a claim under the Double Jeopardy Clause of the Fifth Amendment, Plaintiff fails to state a claim. The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense

to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction and (2) multiple punishments for the same offense. *See Witte v. United States*, 515 U.S. 389, 395-96 (1995). Prison disciplinary proceedings, however, do not constitute criminal prosecutions. *Wolff*, 418 U.S. at 556. Furthermore, the protection against multiple punishment afforded by the Double Jeopardy Clause is not implicated by prior prison disciplinary proceedings for two reasons. First, even if prison disciplinary sanctions are "punishment," they generally are not distinct from the punishment for the conviction for which petitioner is in custody. Second, the sanctions are not punishment for purposes of double jeopardy because they serve the governmental remedial goals of maintaining institutional order and encouraging compliance with prison rules. *See United States v. Brown*, 59 F.3d 102, 104-05 (9th Cir. 1995). Although a "rare" case in which a remedial sanction is so harsh as to constitute punishment may implicate the Double Jeopardy Clause, *Id.* at 105-06, such circumstances are not present in this case. Therefore, Defendants are entitled to summary judgment to the extent Plaintiff states a claim under the Double Jeopardy Clause of the Fifth Amendment.

3. <u>Eighth Amendment</u>

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

In challenging prison conditions, an inmate must show that prison officials acted with deliberate indifference to a substantial risk of harm. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(citing *Farmer,* 511 U.S. at 835). The deliberate indifference standard consists of an objective and subjective component. *Farmer*, 511 U.S. at 843. First, "the deprivation alleged

8

must be, objectively, sufficiently serious." *Id.* (citations and quotations omitted). The act or omission of a prison official must "result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and quotations omitted). Second, a prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost*, 152 F.3d at 1128. Prison officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Here, Plaintiff fails show that the sanctions imposed on him via IP 5.13 are "sufficiently serious." The court concludes that the loss of personal phone calls for 180 days, electrical appliances for 180 days, personal visits for one year, canteen privileges for 180 days, and package privileges for two years fails to amount to a "denial of the minimal civilized measure of life's necessities." Plaintiff does not allege that the IP 5.13 sanction prevents him from receiving adequate food, clothing, shelter, medical care, or reasonably safe confinement. Although the sanctions under IP 5.13 may be uncomfortable and inconvenient, they are not objectively, sufficiently serious under the Eighth Amendment. Therefore, the court grants Defendants summary judgment on Plaintiff's claims arising under the Eighth Amendment.

4. <u>Equal Protection</u>

Plaintiff invokes the Equal Protection Clause in both Count I and Count II. (Pl.'s Am. Compl. 5-7.) Defendants argue that despite Plaintiff's references to the Equal Protection Clause, none of the facts alleged supports an equal protection claim. (Defs.' Mot. for Summ. J. 12-13.)

In order to state a viable equal protection claim, Plaintiff "must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (citing *Barren v. Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in original). Here, Plaintiff

9

does not allege Defendants intentionally discriminated against him because of his membership in a protected class.

Where state action "does not implicate a fundamental right or a suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). In this case, the substance of Plaintiff's allegations do not demonstrate that he has been intentionally treated differently from others similarly situated. Therefore, to the extent Plaintiff states equal protection claims in Count I and Count II, Defendants are entitled to summary judgment.[2]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration (Doc. #84) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. #71) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #79) is **DENIED**.

/ / /
/ / /
/ / /
/ / /

---

[2] To the extent Plaintiff asserts claims under the Nevada Constitution and to the extent Plaintiff's claims can be construed to assert other state law claims, the court declines to exercise jurisdiction over them and expresses no opinion as to the viability of any state law claims. Where the court has dismissed all claims over which the court has original jurisdiction, the court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). "The decision to retain jurisdiction of state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity." *Brady*, 51 F.3d at 816. Here, the court finds that retaining jurisdiction of the pendant state claims would not serve the economy or convenience of this court. Therefore, Plaintiff's state law claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the following motions are **DENIED** as moot:

- Defendant Jones's Motion to Dismiss (Doc. #68);
- Plaintiff's Motion for Hearing (Doc. #107);
- Plaintiff's Motion for Temporary Restraining Order (Doc. #109);
- Plaintiff's Motion for Permanent Injunction (Doc. #110).

**LET JUDGMENT ENTER ACCORDINGLY.**

DATED: August 25, 2010.

_____
UNITED STATES MAGISTRATE JUDGE